UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GARY JACQUES,

                              Petitioner,

- against -

UNITED STATES OF AMERCA,

                              Respondent.
------------------------------------------------------------x

OPINION AND ORDER
15-cv-1878 (NG)
(08-cr-577 (NG))

**GERSHON, United States District Judge:**

On June 29, 2010, petitioner, Gary Jacques, was convicted of substantive and conspiratorial importation of, and possession with intent to distribute, cocaine. The convictions were affirmed on February 6, 2014. *United States v. Jacques*, 555 F. App'x 41 (2d Cir. 2014). Jacques now brings a 28 U.S.C. § 2255 motion challenging his convictions, claiming ineffective assistance of counsel. In addition to responses from the government, at my request, Jacques's trial counsel, James R. Froccaro, Esq., also submitted an affidavit in response to Jacques's petition. Jacques was given until February 14, 2017 to file a reply to the submissions of the government and Mr. Froccaro, but none has been filed. For the reasons stated below, Jacques's § 2255 motion is denied.

## BACKGROUND

On October 3, 2008, in preparation for Jacques's trial, the government provided Jacques with discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, including a narrative of oral statements made by him to law enforcement. According to the government's letter, Jacques had made a number of statements to law enforcement before he was given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and a number of statements after he was given warnings. On October 23, 2009, I ordered the defendants in the case to file any motions to suppress statements, identifications, or other evidence by December 1, 2009. Jacques's counsel at

the time, Thomas F.X. Dunn, Esq., did not submit any such motions. On February 1, 2010, I granted Jacques's application to substitute Mr. Froccaro as his counsel, and to relieve Mr. Dunn.

Mr. Froccaro did not request leave to submit a motion to suppress statements until less than two weeks before trial. Although I initially denied his request because of the delay, I granted his request upon a motion for reconsideration. On June 2, 2010, he filed a motion to suppress certain of Jacques's statements. The motion addressed only those statements Jacques had made before being given *Miranda* warnings. His motion relied on the government's factual narrative as set forth in the government's October 3, 2008 Rule 16 letter. I granted Jacques's motion in part and denied it in part, suppressing one statement out of six.

On appeal, Jacques did not challenge my ruling on his motion to suppress the pre-*Miranda* statements. Instead, Jacques argued that the statements he made after being given *Miranda* warnings, which were not the subject of his pretrial motion, should have been suppressed. The Second Circuit, applying a plain error standard because Jacques had not moved to suppress those statements, rejected his argument.

Jacques now claims in his habeas petition that his trial counsel was ineffective by (1) failing to move to suppress statements Jacques made after being given *Miranda* warnings (his post-*Miranda* statements); and (2) failing to investigate and challenge the government's factual narrative in the motion to suppress the statements Jacques made before being given *Miranda* warnings (his pre-*Miranda* statements), and instead relying on the government's narrative.

### Affidavits

In support of his petition, Jacques filed an affidavit in which he describes his counsel's claimed failings and the favorable facts that he argues his counsel should have relied on in the motion to suppress. In it he states that Dominican law enforcement – Jacques was arrested in the

Dominican Republic and extradited to the United States – told him, at the behest of American law enforcement agents, that he would be given a "heavily reduced sentence" if he were forthcoming with American law enforcement and agreed to plead guilty. He states that these assurances prompted him to make the statements in question to law enforcement. He further states that when he later asked American law enforcement agents to speak to his "family attorney Michal Arbeit," one of the agents told him that "speaking to Mike was going to be a 'conflict of interest'" because Arbeit had previously represented Jacques's co-defendants in other cases. As for his counsel, Jacques states in his affidavit that Mr. Froccaro

> never would speak to me about the circumstances surrounding my interrogation and the statements I made. On one occasion, I specifically asked him if my testimony was needed or if there was anything he needed to know about the suppression and he declined to speak about it, telling me "there is nothing we need other than the government's letter." Though I do not specifically recollect my lawyer's words, it was my strong impression he did not want me to testify about the foregoing circumstances because it may constitute a waiver of my right to refrain from testifying at trial.

In his affidavit responding to Jacques's allegations, Mr. Froccaro states that

> Mr. Jacques' assertion that I never spoke to him about the circumstances surrounding his interrogation and the statements he made to the authorities in or around when he was transported from the Dominican Republic to the United States - is not accurate. I specifically reviewed the government's letter dated October 3, 2008, with Mr. Jacques prior to moving before this Court for the suppression of certain statements made by him. I did not submit an affidavit from Mr. Jacques because Mr. Jacques indicated that the factual assertions in the government's letter were accurate.
>
> Finally, Mr. Jacques appears to assert[] that I denied him of the opportunity to testify at trial. If he is, indeed, making this claim, it is not true. I never deny a defendant from testifying, but rather, provide an opinion to the client about the pros and cons involved - with the ultimate decision whether to testify being the client's decision, alone. Mr. Jacques never indicated that he wanted to testify at his trial.

## DISCUSSION

A prisoner in custody serving a sentence for a federal offense may "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).

3

In deciding a § 2555 motion, the district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b). To be entitled to a hearing with respect to claims of ineffective assistance of counsel, petitioner "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir.2009) (internal quotation marks omitted). And, where, as here, a petitioner is appearing *pro se,* the court must construe his habeas petition liberally and interpret it to raise the strongest arguments that it suggests. *See Erickson v. Pardus,* 551 U.S. 89, 84 (2007); *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001).

Although the court must "view[] the evidentiary proffers, where credible, and record in the light most favorable to the petitioner," the court "need not assume the credibility of factual assertions... where the assertions are contradicted by the record in the underlying proceeding." *Puglisi,* 586 F.3d at 214. Where "material facts are in dispute," the court should "usually" hold a hearing, and make relevant findings of fact. *Id.* However, "when the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." *Id.* Instead, a district court may "'choose a middle road'" by soliciting affidavits to expand the record, if the judge determines that live testimony "would add little or nothing to the written affidavits." *Foster v United States,* 581 F. App'x 105, 106 (2d Cir. 2014) (quoting *Chang v. United States,* 250 F.3d 79, 86 (2d Cir. 2001)). The court may properly choose to credit trial counsel's sworn statements over a petitioner's "self-serving and improbable assertions" in dismissing the petition. *Chang,* 250 F.3d at 86 (holding that trial counsel did not err in crediting counsel's "eminently credible" and "detailed" affidavit over petitioner's assertions);

4

*see also Foster*, 581 F. App'x at 106 ("[A]n affidavit from the petitioner's trial counsel credibly describing the circumstances concerning appellant's failure to testify... was sufficient to support dismissal of the petition."); *Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (internal quotation marks omitted).

### Jacques's Claims of Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court's review of counsel's performance must be "highly deferential," and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Further, "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To show prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

#### A. Post-*Miranda* Statements

On direct appeal, the Second Circuit reviewed Jacques's claim that the four post-*Miranda* statements he made to law enforcement should have been suppressed for plain error because Jacques had not moved to suppress the statements at trial. *Jacques*, 555 F. App'x at 45–46. The Circuit held that, with respect to three of the four post-*Miranda* statements, there was no error because two of the statements were not made in response to interrogation, and one of the statements did not raise *Miranda* concerns because it "[did] nothing more than seek clarification of what the defendant had already volunteered." *Id.* at 46. Therefore, Jacques's counsel was not

5

constitutionally deficient in failing to move for suppression of those three post-*Miranda* statements.

As for the fourth statement, the Circuit held that, though made in response to custodial interrogation, Jacques failed to show prejudice because "the other, admissible evidence of Jacques's culpability, including other admissions made by him, so overwhelmingly established guilt." *Jacques*, 555 F. App'x at 46. Therefore, as the Circuit has already held, Jacques cannot show he was prejudiced by his attorney's failure to move for suppression of his post-*Miranda* statements. *See Bennet v. United States*, 663 F.3d 71, 88–89 (2d Cir. 2011) (finding that petitioner failed to show prejudice under *Strickland* where the Circuit Court had previously, in the direct appeal, found no prejudice under the plain error standard).[1] Accordingly, Jacques's claim that his counsel was ineffective in failing to move to suppress the post-*Miranda* statements is denied.

### B. Pre-*Miranda* Statements

Jacques claims that his counsel, Mr. Froccaro, was deficient in failing to ascertain the factual circumstances surrounding Jacques's pre-*Miranda* statements. Jacques argues that, had he investigated the circumstances, Mr. Froccaro could have included an affidavit by Jacques detailing those facts and even offered Jacques's testimony at a suppression hearing. Specifically, Jacques argues, he could have testified that Dominican law enforcement, at the behest of American law enforcement, had encouraged him to cooperate with American agents, and that he had requested

---

[1] In finding that the other evidence at trial overwhelmingly established Jacques's guilt, the Second Circuit relied, in part, on Jacques's pre-*Miranda* admissions which were introduced at trial. *Jacques*, 555 F. App'x at 46. If, as he claims, Jacques could successfully show that those pre-*Miranda* statements would also not have been admitted but for his counsel's ineffectiveness, the prejudice analysis here would be different from the analysis done by the Circuit on his direct appeal as I could not rely on the pre-*Miranda* statements in evaluating the strength of the other evidence at trial. However, as I explain in the next section, Jacques has failed to establish his ineffectiveness claim as to the pre-*Miranda* statements, and therefore, the Circuit's analysis is controlling.

to speak with his attorney, Mike Arbeit, but that an agent denied his request on the grounds that the attorney had a conflict of interest. These additional facts, Jacques argues, would have persuaded the court to suppress all his pre-*Miranda* statements. However, viewing the evidentiary proffer and the record before me, Jacques has failed to establish that his counsel's performance was deficient.

In his affidavit, responding to Jacques's allegations, Mr. Froccaro credibly states that Jacques's allegation Mr. Froccaro never spoke to Jacques about the circumstances surrounding Jacques's statement is "not accurate." Mr. Froccaro describes that he "reviewed the government's letter dated October 3, 2008, with Mr. Jacques prior to moving before this Court for the suppression of certain statements made by him" and that "Mr. Jacques indicated that the factual assertions in the government's letter were accurate." Jacques did not file a reply disputing his counsel's account.

In sum, in filing the motion to suppress, Mr. Froccaro relied on what Jacques shared with him, which was that the government's letter was accurate. Since Jacques corroborated the government's version of events, Mr. Froccaro's reliance in the motion to suppress on the factual assertions in the government's letter was reasonable.

In his affidavit, Jacques further states that his counsel gave him the "impression" that counsel did not want Jacques to provide an affidavit because doing so could constitute a waiver of Jacques's right to refrain from testifying at trial. Although Mr. Froccaro's statement that he did not prevent Jacques from testifying at trial does not address Jacques's "impression" as to why, he thought, counsel would not have wanted him to testify, there could be no ineffectiveness where the government's letter accurately detailed the facts as Mr. Froccaro knew them to be at the time. His choice to forgo submission of an affidavit by Jacques or Jacques's testimony was reasonable.

Accordingly, Jacques's claim that his counsel was ineffective in failing to include an affidavit or have Jacques testify at a suppression hearing is denied.

Finally, it is worth noting that I observed Mr. Froccaro throughout his representation of Jacques, and he zealously defended and advocated on behalf of his client throughout the proceedings. I have no reason to doubt the veracity of Mr. Froccaro's affidavit or the competence of his representation.

## CONCLUSION

For the foregoing reasons, Jacques's petition for a writ of habeas corpus is denied on the basis of the existing record, without the need for a further evidentiary hearing. Since petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* relief is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to enter judgment for respondent.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: July 10, 2017
Brooklyn, New York

cc: Gary Jacques, 64673-053
FCI Danbury
Federal Correctional Institution
Route 37
Danbury, CT 06811